The next matter, No. 25-1801, Bruno Project Rescue, Inc., et al. v. Centers for Disease Control and Prevention, et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? Good afternoon, Your Honors. Aaron Katz for Bruno Project and the other appellants. And if I could reserve three minutes for rebuttal, please. You may. Your Honors, agencies are entitled to significant deference, but their regulatory choices must always bear a rational connection to the facts that the agency found. And that is particularly important when the agency is changing course, which is what the CDC did here. For essentially 60 to 70 years, there was no age restriction on dogs being imported into the United States from countries that the CDC has recognized to be rabies-free. The CDC recognizes countries as rabies-high-risk, rabies-low-risk, or rabies-free. And there had never been an age restriction on dogs coming from rabies-free countries. They then suddenly reversed course, and they seem to be claiming it's because of concerns with fraud. Specifically, dogs coming from, in fact, rabies-high-risk countries and being pit-stopped in rabies-free countries and being misrepresented as to their providence when they arrive to the border crossing. There is not a single example in the administrative record of an instance of that sort of fraud being connected with any of the rabies-free Caribbean islands on which my clients' rescue efforts focus. Well, it doesn't really need to be just the Caribbean islands, right? They can act a little bit more broadly than that to the extent that they're concerned about somebody moving animals through a rabies-free country. It doesn't have to be the exact same country or set of countries, does it? Well, so I think, Your Honor, the CDC's position is that they have instances of what they call fraud that are connected with countries like Mexico, where people are trying to drive dogs across the border and misrepresenting where they originally had come from. And they say we can sort of speculate that that sort of fraud will bleed into other countries. Federal courts have addressed this exact type of reason. Excuse me. Why is that speculation as opposed to simply a rational prediction of what is going to happen If they have documented, I think it was 52 instances of fraudulent certificates, why would one expect that that type of fraud would not grow into other areas where it had not earlier existed? And Mexico is not very far from Puerto Rico, from the Caribbean islands. Well, I think, Your Honor, this is the benefit of having 60 years of experience. No, no, no, no, no, no. In those 60 years, this issue of fraud was not of major concern. It is an issue that has arisen, and the agency had to do something about it. Can we at least agree they had to do something about the issue of fraud? Well, unfortunately, Your Honor, what they did is actually relax the requirements for dogs coming from high-risk countries. There was a temporary suspension where dogs coming from high-risk countries could not get into the United States at all. Okay, that's not your issue. Okay, so let's go back to why is the agency, which has to be concerned with dogs coming in from the entire world, why is it required to single out the Caribbean? Well, it's our lawsuit that's seeking that relief, right? That's the only relief we are focused on. But the other thing that I think is important to look at is what was the change with respect to dogs coming from rabies-free countries, all rabies-free countries? They still do not need a vaccination requirement. They still do not need vaccination paperwork. And so the CDC's position appears to be there's going to be a risk of fraud that has never manifested itself, but there's going to be a risk that that fraud will impact dogs less than six months, but not dogs over six months, because they have not changed the entry requirements at all with respect to dogs that are six months and older. And this is essentially the CDC predicting a problem that has never manifested with respect to countries that we are focused on. And these are countries where the dog we know where the dogs are flying in from. I mean, these dogs are arriving to airports. So we have pristine documentation about where they last had been. So the CDC is saying maybe someone has flown a dog from Egypt to St. Lucia and then flying them from St. Lucia to the United States. The CDC and the administrative record does not explain at all why they think there is a risk that a dog from a high-risk country is ever going to make it into one of these Caribbean islands, which is an essential component of pit-stopping a dog. They just haven't shown that at all. And there were four years, Your Honor, under essentially the temporary suspension rules where the CDC said these diversion incentives were highest, and they don't cite a single example of a dog coming from any of these countries. There's only actually one example that they cite in their brief and that's cited in the administrative record of a dog coming from a rabies-free country that, in fact, had been originally from a rabies-high-risk country, and that's the Egyptian dog, which was an adult dog, so it wouldn't even be covered by this new rule, being driven across the Canadian border. And there was actually no evidence, there's no indication in the administrative record, that that was actually a fraud case as opposed to just vaccination paperwork being presented and the vaccine not having been administered effectively. I think so far your argument has primarily been premised on the notion that the government was acting solely to address fraud. It doesn't seem like that's the government's sole argument. They also proffered justifications based on the inspection of the dogs, correct, just to determine whether or not they were exhibiting any symptoms that would be indicative of rabies, and that that's easier to do after the dog is more than six months old. So isn't that at least arguably an independent basis for the conclusion? Well, I don't think that would be a rational basis in the absence of the fraud articulation, and that's because the dogs that are legitimately truly coming from rabies-free countries that were born there, that spent their whole lives there, and that are arriving in the United States, there is zero risk that these dogs are going to be infected with dog rabies. Zero risk is a fairly bold statement. It seems to me that there is a possibility that the government could consider that rabies could be reintroduced to a country and not be yet aware of it when the dogs are coming over to the United States. And so it's a prophylactic measure to ensure that to the extent that rabies does make it back into the country, that it doesn't slip over the border before people are aware. Well, if that's really their rationale, then what they should have done was also impose a vaccination requirement on the dogs that are six months and older, which they do not. They have not. If you bring a dog that is exactly six months, they don't need to be vaccinated for rabies. You don't need to present a vaccination certificate at all. But isn't that within the range of what an agency typically gets to choose between? An agency has on its menu a variety of options that it can select. It could make sense to require a vaccination. It might also make sense simply to wait until they're old enough to visually inspect as they come across the border. So that seems to me to be changing how we normally look at an agency decision. Well, I think always, Your Honor, the agency has to – there needs to be a rational connection between the facts found and the choice made. At some point in time, at some point on the spectrum, the agency's solution to the predicted theoretical problem that they are trying to solve becomes so disjointed and internally inconsistent that it fails the rationality test. And if that means that the agency should go back and reconsider whether there should be a vaccination requirement, that's fine. I'm not making a decision about what the agency should do to make this a rational rule, but the solution that they came up with doesn't rationally solve the problem. The other thing I would like to point out is that when an adult dog presents at the port of entry, you can't do a visual inspection and reliably say this dog either does or does not have rabies. I mean, the most reliable way to determine an adult dog does not have rabies is – there's two ways. One is a vaccination certificate, which they don't require from dogs coming from rabies-free countries. The other is where is the dog actually coming from? If it's coming from a rabies-free country, we can have – I mean, essentially, if you look back in the record, there's no instance ever where a dog coming from one of these islands has been found to be infected with rabies. And, in fact, there's never an instance where a dog who originated truly in a rabies-free country has come in infected with rabies. All of the instances in the administrative record are dogs coming from rabies-high-risk countries. And, again, the administrative record provides no evidence that any of those dogs are at risk of being pit-stopped in the countries that my client's lawsuit is focused on. There's just none. I think then-Judge Kavanaugh's opinion in National Fuels is dead on point. Yes, it's not in the public health context, but the reasoning that he uses is exactly the same reasoning that this court could use to find that rationality was not shown here. There was a problem in one area. The agency is predicting it's going to bleed into another area, but they don't actually have any evidence that's going to occur. I think if you look at the Supreme Court's decision in Prometheus, that is a good example of the type of data that an agency needs to determine whether a problem is going to bleed into another area or not. In Prometheus, they asked whether there was any evidence that minority and female ownership of radio stations was going to be negatively impacted from the rule change. They gave commenters six months to put in that evidence, and the evidence was not presented at all. There was zero. Can we return to the question Judge Dunlap asked you about? Your argument, at least to us right now, seems to be premised on this. There was a fraud problem. The change to the process by the CDC does not rationally relate to that fraud problem in what Judge Dunlap said, but the CDC gives other reasons why for the change, right? And can't we look at those, for instance, the inspection requirement? But I think the two are inextricably intertwined.  Because the CDC is not saying that there's a risk that a dog that truly was originating from one of these rabies-free countries is going to come in infected with rabies. That is not their assertion. The agency essentially acknowledges that at this point in time they have no evidence that a dog born and raised, for example, in St. Lucia where my dog is from. You say truly came from one of those jurisdictions, but as Judge Dunlap pointed out, a rabies or several rabies-infected dogs could have been introduced into those jurisdictions, and it would take a while for those jurisdictions to understand that they were no longer rabies-free. Well, Your Honor, one of the reasons why the CDC calls these islands rabies-free, these countries rabies-free, is because the CDC has reviewed their policies, and they are confident that those countries are not going to allow in rabies-infected dogs to their countries. Apparently they're not. They're hedging against risk. And at some point, my argument, Your Honor, is that at some point the hedging becomes so speculative, especially when you're changing rules, that it's just not rational under the APA. Okay. Thank you. Thank you. Thank you. At this time, would counsel for the appellees please introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court. Brian Springer on behalf of the federal government. I'd just like to take a step back and note that this case involves a classic public health measure. It's intended to prevent rabid dogs from entering the country and spreading the deadly virus to humans and to other animals. The Supreme Court recognized that the CDC can issue measures like this one to identify, isolate, and destroy communicable diseases. And as the Sixth Circuit recently recognized, the age requirement fits that mold because it helps to ensure that inspectors can accurately screen for whether a particular dog is infected before it gets into the country. I'm happy to start wherever would be helpful for the Court. I mean, I think a lot of the discussion this morning has focused on what evidence was before the agency. And as the Sixth Circuit explained, I think, helpfully in its decision, again, we're analyzing the question under the APA's deferential, arbitrary, and capricious standard. The CDC has multiple choices of what to decide to do, and as long as it operates within a zone of reasonableness, courts uphold its reasoning. And here, I think that the CDC explained precisely the reasons for the age requirement and how it makes sure that rabies is not going to come into the country. Your brother disputed the assertion that you could add inspection if a dog was six months or older, have a pretty good sense of whether it had rabies or not. And do you agree with that? Sure. What the agency explained in the rule is it said that when dogs are under six months, puppies often exhibit behaviors that are some of the symptoms of rabies, in particular that puppies can have uncoordinated movements. So what this does is it takes that off the table and makes it easier for inspectors to make sure that if they're seeing a dog that's uncoordinated, they don't have to just excuse that as puppy behavior. Instead, that may be an indicator of rabies and suggests that there should be some follow-up to make sure that the dog that's in front of the inspector doesn't have rabies. So what happens if you have a dog over six months who is displaying those behaviors? What happens on inspection? Usually the way this works, it's sort of happening at the customs table as someone is coming through customs. And if the inspector sees something, it could be that the dog is having this dyskinetic movement. There could be other reasons to suspect that something's going on related to the dog or to the person. If that happens, they will pull the dog to the side, usually into some secondary screening location, and do follow-up. They can call CDC, who has all kinds of tools, and veterinarians often on staff if you're at a really busy airport who can do follow-up. And if needed, you may either sort of reject entry for the dog or put the dog into quarantine to make sure that a rabid dog doesn't come into the United States. Was there evidence in the administrative record showing that importers were fraudulently representing that their dogs were arriving from rabies-free places? Yes, Your Honor. So I point the court to the rule to start. So the rule, for example, at page 41753, talks about that CDC has observed this happening on many occasions. It's elaborated on in the rule at 41766. CDC discusses both. It's seen this numerous times, and Customs and Border Patrol has seen this numerous times. And I'm also happy to give you references to the administrative record itself, but the rule itself explains that there were numerous instances of this happening where importers were showing up to the border and saying, my dog has not been in a high-risk country in the last six months, and that turned out not to be true, or they had reason to suspect that that wasn't true. So correct me if I'm wrong, but I sort of understood the argument from the other side to be that, well, the entry requirements didn't change vis-à-vis older dogs, so that because those entry requirements didn't change, that really doesn't align with the CDC's stated goal of correcting for fraud. That's how I understood your opponent's argument. Could you address that? And it may be that I'm misunderstanding that. So, Your Honor, maybe just to sort of take a step back, I mean, what the CDC had seen, again, was that importers on occasion were bringing dogs from high-risk countries through low-risk or rabies-free countries and then coming into the United States and lying about where the dog had been. So what the CDC said was part of the reason that we need the age requirement is particularly in those instances where someone is lying, we want to make sure we have another check on that dog to make sure that, you know, if it does have rabies, that the inspectors can see that as it's coming through the border to make sure it doesn't come into the country. So this was sort of an added check, particularly against the backdrop of the fraud that the agency had seen, you know, over the years before it issued the rule. I think the argument is, well, you took a half measure. You could have taken a whole measure and done more as to adult dogs given this risk. That doesn't make taking half a measure irrational. Had they taken full measures, might well have shut down the dog importation business. I mean, I think that's right. What the CDC was trying to do here was balance what it recognized would be a burden on importers against the public health risks and coming up with a rule that it thought would sort of target the risks in the appropriate way. As the cases are very clear that agencies don't have to sort of try to address, you know, the whole scope of the problem all at once, and the agency thought that this was a reasonable way to do this that didn't impose sort of an unduly high burden on importers, you know, recognizing that this was going to make some changes to how this had operated before. So I'm just curious, when they detect fraud, is that referred to the U.S. attorney for prosecution? I think it depends on the individual case. I mean, this is usually starting with a customs agent at a desk, and then it sort of escalates from there as needed, both to have CDC get involved and veterinarians get involved to make sure. You know, I mean, for purposes of the rule, I think the focus is on making sure that there's no public health problem. But I think there can be times you do attest sort of when you sign these forms to the fact of their truth, and so it could form the basis for some, you know. If you were here earlier, the issue of repeat offenders is one that we are concerned about. Your Honor, and again, you know, the CDC was basing this on its experience of people who were trying to sneak dogs, you know, through the United States when they weren't supposed to, and in fact, you know, there were instances where rabid dogs actually made it into the country, and it was sort of a big deal to try to contain rabies and make sure it didn't get reintroduced as it had in Malaysia many years ago. Unless there are any further questions, we ask that this court affirm. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellants please reintroduce himself on the record? He has a three-minute rebuttal. Thank you, Your Honors. Aaron Katz for the Appellants. I want to first quickly address the false positives versus false negatives issue. It's missing the dog that has rabies that is the issue. It's not identifying, misidentifying a dog as having rabies when it really doesn't. Adult dogs, rabies incubates for six to eight weeks at least, and sometimes six months. The time between symptoms appearing that you can visually see and death is like a few days. So these visual inspections that are going to be taking place with respect to an adult dog, it's just not going to be reliable. What's the reliable indicator for whether a dog definitely doesn't have rabies is, again, whether they're vaccinated, they don't ask for vaccination or vaccination certificates for dogs coming from rabies-free countries, or where the dog is coming from. And if they don't have evidence of fraud and the dog is coming from a rabies-free country, essentially they are agreeing it doesn't have rabies. That's why we're not asking for a vaccination certificate. On the half measure versus full measure, when a half measure becomes irrational, where there's really no explanation for why you didn't take a full measure, the reason why the APA kicks in and why the court should be very skeptical of the agency's rationale is because it indicates that the agency is actually doing something pretextual and is actually announcing the rule or the rulemaking for reasons they don't have statutory authorization to do. And here, if you look at the administrative record, there is a very real sense that they are trying to protect the welfare of dogs, not the welfare of human beings, and that they're trying to just prevent dogs from under six months coming into the country from foreign countries just for its own sake. The CDC just apparently doesn't like when people bring puppies in from other countries when people could be adopting puppies that are from the United States. And that is not within their statutory authority. If they were really concerned with rabies risk, they would not have reversed the temporary suspension to allow dogs to come in from high-risk countries, and they would have imposed some sort of vaccination requirement even on dogs coming from rabies-free countries. They did none of those things, and the suggestion is that this regulation is really pretextual and for reasons outside the CDC's statutory authority. In terms of the evidence in the administrative record, in the Royal Potcake matter, which is currently pending in the Eleventh Circuit, in the district court, the district magistrate judge that was hearing the case asked the CDC to put in a supplemental brief highlighting all of the instances of fraud that it believed justified the rule. And the CDC did so. It was at ECF 69 of that district court record. And the CDC cited administrative record pages, USAO. It's the same USAO pages as in the district court record here. USAO 6170, 6172, 6174, all the way through 6362. These were the instances that the CDC said justified the rule. There's not one instance that comes anywhere close to being an instance of fraud connected to any of these rabies-free countries. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.